AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Salvatore L. Astolfi)  18-118

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>GARRICK KIRK<br>and<br>AMIR SHORTER<br><br>*Defendant(s)* | )<br>)<br>) Case No. 18-1661-1-2-m<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 18, 2018__ in the county of __Bucks__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(a)(1)(A) and (2) | Knowingly making, and aiding and abetting, the making of a false statement and representation with respect to the information required to be kept in the records of a federally licensed firearms dealer in connection with the acquisition of a Glock 19, 9mm, SN: EPC069US. |

This criminal complaint is based on these facts:

**Please refer to the attached affidavit.**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Rooney, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/19/2018__

_____
*Judge's signature*

City and state: __Philadelphia, Pennsylvania__  Hon. Carol Sandra Moore Wells
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Ryan Rooney, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I, Ryan W. Rooney, am a Special Agent for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been employed since March 2014. I am currently assigned to ATF Philadelphia Group VII, which is a Firearms Enforcement Group, whose primary responsibilities include investigating violent crime through the interdiction of firearms being possessed or used by violent criminals in Philadelphia, Pennsylvania. During my career as an ATF Agent, I have applied for and executed Federal search warrants and seized evidence in accordance with the probable cause set forth in the affidavits. I have led investigations related to firearms trafficking and I have arrested individuals in violation of Federal firearms laws; I am familiar with evidence needed in a criminal complaint affidavit to establish probable cause.

2.  As a Special Agent with ATF, I am vested with the authority to investigate violations of Federal law, including Title 18, 21, and 26 of the United States Code.

3.  As part of my duties, I am assigned to the investigation of Amir SHORTER and Garrick KIRK, who have conspired to illegally and knowingly make false statements with respect to the information required to be kept in the records of Federal Firearms Licensees (FFLs), in violation of 18 U.S.C. § 924(a)(1)(a), and Aiding and Abetting in violation of 18 U.S.C. § 2.

### PURPOSE OF AFFIDAVIT

4.  This affidavit is provided in support of a Criminal Complaint and Arrest Warrant charging Amir SHORTER and Garrick KIRK with conspiracy to (a) knowingly make false

statements with respect to the information required to be kept in the records of Federal Firearms Licensees (FFLs) in violation of 18 U.S.C. § 924(a)(1)(A), and Aiding and Abetting, in violation of 18 U.S.C. § 2.

5. I am familiar with the information contained in this affidavit through my own investigation and/or from my discussions with other law enforcement officers and witnesses. This affidavit is intended to show that there is probable cause for the requested arrest warrants. It does not contain all of the information known to me or developed in the course of the investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

6. The rules and regulations governing FFL holders require that a person seeking to purchase a firearm fill out a Firearm Transaction Record, ATF Form 4473. Part of the Form 4473 requires that the prospective purchaser certify that all his or her answers on Form 4473 are true and correct. The Form 4473 contains language warning that "making any false oral or written statement, or the exhibiting of any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony." FFL holders are required to maintain a record, in the form of a completed Form 4473, of the identity of the actual buyer of the firearms sold by the FFL holder.

7. 18 U.S.C. § 924(a)(1)(A) provides that it shall be unlawful to knowingly make any false statement or representation with respect to the information required to be kept in the records of a person licensed to deal in firearms.

8. A person who purchases a firearm for another person and falsely completes the Form 4473 is a "straw purchaser." Acting as a straw purchaser is referred to as "lying and buying," and is a violation of 18 U.S.C. § 924(a)(1)(a).

9. ATF commenced an investigation into Garrick KIRK in October 2018 after receiving information from an employee of the Ready, Aim, Fire (RAF), Bristol, PA, a Federal Firearms Licensee (FFL), that KIRK made a firearm purchase that the employee believed to be suspicious. Through my experience and that of other ATF agents, I know RAF to be an FFL operating in Bristol, Pennsylvania, and that RAF operates both as a brick-and-mortar store where customers can purchase firearms as well as a shooting range for public use. The RAF employee informed ATF that on or about October 9, 2018, Garrick KIRK had purchased one firearm in a single transaction from RAF. The employee reported the sale appeared legitimate until he noticed KIRK leaving in a vehicle with two males that were previously in the store looking at firearms. ATF then learned of the recovery of a firearm originally purchased by KIRK on 04/12/2018 from RAF in Bristol, PA, and then recovered on 08/05/2018 in Trenton, NJ, only 115 days later. The aforementioned firearm's serial number had been partially obliterated but was still readable.

10. ATF reviewed multiple sales reports for KIRK that reveled KIRK purchased two handguns from Tanner's Sports Center, located in Jamison, PA, on 08/13/2018 and four handguns from Tanner's Sports Center on 09/28/2018. Through further investigation ATF determined KIRK had purchased at total of approximately 13 Firearms in Pennsylvania since April of 2018.

11. Given my training and experience, I know that purchasing a large number of handguns, particularly of the same or a similar type, in a short period of time, especially when the purchaser is purchasing multiple handguns per transaction, are all indicators of "straw purchasing" and firearms trafficking. The fact that one of the firearms was recovered by police in New Jersey in only 115 days after it was purchased by KIRK reinforces my belief.

12. On 10/18/2018, ATF was notified by an employee at The Bunker Gun Shop, Levittown, PA, that KIRK had inquired about a firearm the store had for sale and was coming to the store to purchase the firearm that he inquired about. After receiving this information, ATF Agents and Task Force Officers set up surveillance in the area of Bunker Gun Shop and remained in contact with the store manager. KIRK subsequently arrived at the Bunker Gun Shop in a black in color Nissan Murano bearing New Jersey license plate K68KDW (hereafter referred to as the "vehicle", with two other males later identified as Amir SHORTER (the front passenger) and Nathan STONE (the driver). A review of New Jersey Department of Transportation records revealed that this vehicle is registered to a Marcos Mateo Benitez.

13. During ATF's surveillance outside of The Bunker Gun Shop, investigators observed KIRK go inside of The Bunker Gun Shop, and observed SHORTER and STONE remain in the vehicle. After several minutes, ATF surveillance observed KIRK exit The Bunker Gun shop carrying a white plastic bag. While the aforementioned surveillance was ongoing, ATF Agents were contacted by employee of Bunker Gun Shop who informed agents that KIRK had just purchased two pistols and that KIRK also had a firearm on his person. According to the employee, the two purchased firearms were inside a white bag.

14. After leaving the store, ATF surveillance observed KIRK with the white bag enter the vehicle occupied by SHORTER and STONE and the three men then drove from the area.

15. ATF personnel conducted mobile surveillance of the vehicle as it drove from the area. During this surveillance, ATF personnel observed that STONE was driving the vehicle and SHORTER and KIRK were the passengers. ATF personnel conducted mobile surveillance of the vehicle which eventually travelled east on Street Road to RT 1, to the PA Turnpike Westbound. The vehicle then got off at an exit then reentered the PA Turnpike Eastbound and traveled

Eastbound to the Bristol Exit 359 where it exited. ATF personnel continued to follow the vehicle as it drove to 7200 Marion Avenue, Bristol, PA, where the vehicle parked in front of Apartment Building 200.

16. Based on the facts and circumstances of the investigation, investigators believed the individuals in the vehicle were involved in straw purchasing the aforementioned firearms and that the interdiction of the firearms was necessary. ATF personnel approached the vehicle, identified themselves as law enforcement, and removed and secured KIRK, STONE, and SHORTER. In plain view, agents observed and recovered two firearms identified as a Glock 19, 9mm, SN: EPC069US and a Kahr .380 pistol. Agents also removed a Glock pistol from the person of KIRK.

17. At the scene, ATF personnel conducted a post-Miranda interview of Garrick KIRK. KIRK identified 7200 Marion Avenue, Apt 226, Levittown, PA, as his residence and signed a consent to search form for this residence. On the, consent form he also gave consent to search his cellular telephone. ATF personnel then conducted a consent search of this residence, recovering firearm boxes, a Dremel tool (commonly used to remove serial numbers from firearms), firearm ammunition magazines, and other parts and accessories.

18. The Owner of the vehicle was called by ATF agents and agreed to come to 7200 Marion Avenue and provide consent for Agents to search his vehicle. The registered owner arrived and signed a consent form for the vehicle. A search was conducted by ATF personnel and recovered inside the vehicle was firearms paperwork, quantities of a green leafy substance consistent with marijuana, two firearms boxes, and four cellular telephones.

19. Subsequently, the males were transported to interview rooms at the ATF offices, U.S. Custom House, Philadelphia, PA. They were advised of the Miranda warnings which they

waived, agreeing to speak with ATF personnel. During the post-Miranda audio/video recorded interview of KIRK, KIRK informed ATF personnel that he had purchased approximately fifteen firearms since April 2018 from local gun stores. KIRK stated that he had purchased these firearms for SHORTER. KIRK stated further that SHORTER would pay him approximately $100 for himself for every firearm he purchased for SHORTER. KIRK admitted to knowingly making false statements with respect to the information required to be kept in the records of the respective Federal Firearms Licensees; namely, KIRK admitted to marking that he was the actual buyer of the firearms on each of the ATF Form 4473s, although he knew this statement to be false. KIRK stated further that he knew the FFL would not sell him the firearms if he marked that he was not the actual buyer, so he lied on the forms and marked that he was the actual buyer.

20. KIRK also stated that SHORTER would call him or text him and discuss the specific models of firearms that SHORTER wanted. KIRK believed that SHORTER, who he knew was a member of a notorious street gang known as the "Bloods," was either reselling the firearms in New Jersey for profit or using them for his gang or to protect his drugs. KIRK stated he believes SHORTER sells drugs but was not aware of what type of drugs. KIRK stated that SHORTER would pick him up in a vehicle with someone else driving, transport him to the FFL and provide him with cash to purchase firearms before KIRK entered the stores to make the purchases. KIRK stated that he would immediately provide the firearms to SHORTER after he had purchased them.

21. With KIRK's consent, Agents went through KIRK's phone with him to discuss a series of text messages. On the phone, there is text message conversation between KIRK and SHORTER during which they discussed what firearms they should purchase on 10/18/2018.

Agents subsequently asked KIRK about the Dremel tool recovered in his residence and KIRK stated that they have used that tool to take off the serial numbers of the firearms they purchase.

22. During the post-Miranda audio/video recorded interview of SHORTER, SHORTER explained that he is from Trenton, New Jersey and that he was shot in September 2018 in Trenton. SHORTER stated that he was shot in the right side of his body and right arm. During the interview, SHORTER admitted that KIRK straw purchased a Glock 19 for him on 10/18/2018. SHORTER had previously stated, that "…When I got shot I felt as though I needed revenge, I didn't do nothing about it though, I have been in the house … I felt as though I would need one for protection … ." SHORTER also stated that he sells marijuana. With respect to the straw purchase of the Glock 19, SHORTER explained that he asked KIRK if he could get a Glock for him, which KIRK agreed. SHORTER stated he gave KIRK the money to purchase the firearm and told him what type of firearm he wanted. KIRK then purchased the Glock from the gun store. When investigators asked SHORTER if Law Enforcement had not intervened what would have happened with the firearm, SHORTER stated "… I would have put it up somewhere and then used it from when I needed to use it … have it on me when I feel as though I needed it … ." Agents asked SHORTER if he was going to take the firearm home after dropping off KIRK and SHORTER explained not initially because KIRK was going to take the "numbers" off first, that is, take the serial number off the firearm.

## CONCLUSION

23. Based on the above information, and my experience and training as an ATF special agent, I believe there is probable cause to charge Garrick KIRK and Amir SHORTER for knowingly making false statements with respect to the information required to be kept in the

records of Federal Firearms Licensees (FFLs) in violation of 18 U.S.C. § 924(a)(1)(A), and Aiding and Abetting in violation of 18 U.S.C. § 2.

Respectfully submitted,

Ryan Rooney, ATF Special Agent

Subscribed and sworn to before me this 19th day of October, 2018,

HON. CAROL SANDRA MOORE WELLS
United States Magistrate Judge